IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 4:11-CR-3059 |
| vs. | |
| MICHAEL J. BREAULT, | MEMORANDUM AND ORDER |
| Defendant. | |

      This matter is before the Court upon initial review of the pro se motion to vacate under 28 U.S.C. § 2255 (filing 86) filed by the defendant, Michael J. Breault. The motion was timely filed on March 11, 2013, less than 1 year after Breault's conviction became final. *See* § 2255(f). The Court's initial review is governed by Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts, which provides:

> The judge who receives the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

      A § 2255 movant is entitled to an evidentiary hearing unless the motion and the files and records of the case conclusively show that the movant is entitled to no relief. § 2255(b); *Sinisterra v. United States*, 600 F.3d 900, 906 (8th Cir. 2010). Accordingly, a motion to vacate under § 2255 may be summarily dismissed without a hearing if (1) the movant's allegations, accepted as true, would not entitle the movant to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995); *see also Sinisterra*, 600 F.3d at 906.

BACKGROUND

The defendant was initially charged in 2011 with six counts of violating the wire fraud statute, 18 U.S.C. § 1344. Filing 1. Generally speaking, the indictment alleged a scheme in which the defendant, an officer of Charter West National Bank, forged loan applications and misappropriated the funds. Filing 1 at 1-3. He opened a savings account in the name of "Kingswest Association" to channel the proceeds, and transferred funds belonging to the Kingswood Athletic Association ("KAA") into the Kingswest account to make payments on the fraudulently obtained loans. Filing 1 at 2. The defendant pled guilty to the first count of the indictment. Filing 38 at 1.

The presentence investigation report (PSR) determined that the loss calculation, for purposes of U.S.S.G. § 2B1.1(b)(1), was $244,139.58—$206,135.58 from Charter West, and approximately $38,004 from KAA. Filing 81 at 10. Accordingly, pursuant to § 2B1.1(b)(1)(G), the PSR calculation included a 12-level increase in the offense level. Filing 81 at 10. The defendant's total offense level was 18, which, when combined with his lack of criminal history, resulted in an advisory Sentencing Guidelines range of 27 to 33 months' imprisonment. Filing 81 at 11, 15.

The defendant, through counsel, objected to the PSR in two salient respects. First, the defendant objected that the loss calculation included interest of $7,821.46 attributed as a loss to Charter West. Filing 81 at 18. *See* § 2B1.1 cmt. n.3(D)(1) (loss shall not include interest of any kind). In the addendum to the PSR, the probation officer responded that even if the interest was not counted, the total loss (including the KAA funds) was still over $200,000, meaning that the Guidelines calculation was unchanged. Filing 81 at 19.

But the defendant also objected to including the KAA funds, asserting that "[d]efendant has not been shown a calculation of loss of [KAA] which originated with the claimed victim, [KAA], and hereby asserts for purposes of this submission the loss related to [KAA] is 0." Filing 81 at 18. In the addendum to the PSR, the probation officer stated that KAA "sustained a loss of approximately $38,004" and that "[t]he case agent will be required to verify, or, alternatively, dispute these figures, if these are not accurate." Filing 81 at 19. But, the probation officer noted,

> the defendant was aware of the loss incurred, as well as the probability of restitution owed to [KAA], prior to entering his plea of guilty to the instant offense. If the defendant is currently disputing these amounts, or stating that no loss or restitution was incurred or is owing to [KAA], the Court may consider whether the defendant has accepted responsibility.

- 2 -

Filing 81 at 19.

The defendant lodged the same objections with the Court. Filing 45 at 1. In response, the government pointed out that in pleading guilty, the defendant had admitted using KAA funds to make payments on the fraudulent loans from Charter West. Filing 50 at 2. The government suggested that the defendant's argument that the loss was unproven "borders on the non-acceptance of responsibility...." Filing 50 at 2. And the government represented that

> [t]he evidence that will be presented at the sentencing hearing will establish that the defendant used $67,162 of [KAA] money to make payments on loans fraudulently obtained by the defendant from Charter West Bank. However, bank records show that $28,181 was repaid to the [KAA] by the defendant through the nominee account. The balance, $38,981, is the amount not repaid to [KAA] that was used by the defendant as part of the bank fraud. There was no evidence that the Government could find that the defendant repaid [KAA] for the money that was deposited into the nominee account, other than the $28,181 previously discussed.... If pressed at the time of sentencing, the United States will present evidence related to the Charter West Bank account used by the defendant to conduct the criminal transactions.

Filing 50 at 2.

In his sentencing statement, filed through counsel, the defendant withdrew the objection relating to KAA. Filing 59 at 1. The defendant represented that restitution had already been made to Charter West in the amount of $206,135.58, and recognized that he would still owe KAA $38,004. Filing 59 at 1. Then, before sentencing, the defendant filed an affidavit that he had *personally* executed, averring to his understanding that his restitution would include $500 to KAA and $38,381 to EMC, KAA's bonding company. Filing 77 at 1. The affidavit represented that those funds had been prepared for delivery so that full restitution would be paid.[1] Filing 77 at 1-2.

The defendant also filed a motion for variance (filing 57) and at sentencing, the Court granted that motion.[2] Filing 79. The Court varied downward from the Guidelines range and sentenced the defendant to 16

---

[1] Final arrangements for delivering the funds were made at sentencing. *See* filing 79.

[2] The undersigned judge was also the defendant's sentencing judge.

months' imprisonment. Filing 83 at 2; filing 84 at 2-3. The Court explained that the primary reason for the departure was the defendant's "full and prompt acceptance of responsibility and full payment of restitution . . . ." Filing 84 at 3; *see also* filing 79. The defendant did not appeal, and later filed the present motion to vacate *pro se*. Filing 86.

## ISSUES

The defendant's motion claims ineffective assistance of counsel by not contesting the loss calculation at sentencing. Filing 86 at 9. Specifically, the defendant claims that his counsel was ineffective in two respects. First, counsel did not object at sentencing to the inclusion of interest on the Charter West loans. Filing 86 at 5. And second, the defendant complains about the KAA loss, asserting that "[w]ith respect to the $38,881, [the defendant] does not know where this amount originated because the indictment only charged the two loans for $99,000 each. Additionally, no evidence was given for the $38,881 loss." Filing 86 at 6. The defendant asserts that had counsel objected to those amounts, the loss calculation would have been less than $200,000, resulting in a 10-level instead of a 12-level enhancement to his offense level. Filing 86 at 4. This, according to the defendant, means that a downward variance of 59 percent from the low end of the decreased Guidelines range would have yielded a sentence of 12 months.[3] Filing 86 at 4.

## STANDARD OF REVIEW

To establish a claim of ineffective assistance of counsel, the defendant must show that his attorney's performance was deficient and that this prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance can be shown by demonstrating that counsel's performance fell below an objective standard of reasonableness. *Id.* at 688. However, the Court's scrutiny of counsel's performance is highly deferential, because the Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689.

To satisfy the prejudice prong of *Strickland*, the defendant must show that counsel's error actually had an adverse effect on the defense. *Gregg v. United States*, 683 F.3d 941, 944 (8th Cir. 2012). The defendant must do more than show that the errors had some conceivable effect on the outcome of the proceeding. *Id*. Rather, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

---

[3] The Court notes that although an alleged sentencing error generally does not support a § 2255 motion, the defendant's motion is cognizable under § 2255 (albeit without merit) because he has framed it in the context of ineffective assistance of counsel. *See Auman v. United States*, 67 F.3d 157, 160-62 (8th Cir. 1995).

proceeding would have been different. *Id*. A "reasonable probability" is less than "more likely than not," but it is more than a possibility; it must be sufficient to undermine confidence in the outcome of the case. *Paul v. United States*, 534 F.3d 832, 837 (8th Cir. 2008).

## ANALYSIS

Neither prong of *Strickland* is satisfied here. Most significantly, the defendant has not alleged facts to show that had his counsel objected to the KAA losses, that objection would have succeeded. As a result, the defendant can establish neither deficient performance nor prejudice.

### DEFICIENT PERFORMANCE

To begin with, it is apparent that the defendant's counsel made an objectively reasonable decision not to object to the calculation of KAA's loss.[4] Significantly, the defendant has not alleged that he did not, in fact, misappropriate KAA funds as alleged in the indictment. The defendant alleges that he "does not know where this amount originated because the indictment only charged the two loans for $99,000 each" and that "no evidence was given for the $38,881 loss." Filing 86 at 6. That is not the same as alleging that he didn't actually use the money. And the defendant's current profession of ignorance is contradicted by the affidavit he submitted before sentencing, when he certainly seemed to understand the amounts at issue and to whom restitution for them should be paid. Filing 77 at 1.

Counsel could have recommended to the defendant that the government be put to its proof on the KAA loss. But had he done so, the record suggests that the government would have met that burden—and the defendant would not only have gained nothing, but would have risked the three-level reduction in the offense level for acceptance of responsibility, *and* would have been unable to make the full restitution before sentencing that was the key to the Court granting his motion for variance. The defendant had pled guilty to an indictment that alleged stealing KAA funds, and had by the time of sentencing effectively admitted the amount in his affidavit in support of restitution. It was reasonable for counsel to accept those admissions. *See Rucker v. United States*, 2003 WL 244728, at *6 (D. Minn. 2003). Faithful representation of a client's interests frequently involves practical considerations, and often the interests of the accused are not advanced by contesting all guilt. *See Tollett v. Henderson*, 411 U.S. 258, 268 (1973). In this

---

[4] The defendant is likely correct that interest on the Charter West loans should not have counted toward the loss calculation. *See* § 2B1.1 cmt. n.3(D)(1). But only the KAA loss was significant enough to bring the total loss below $200,000 and, thereby, actually reduce the defendant's total offense level.

case, the defendant's counsel made an objectively reasonable decision not to risk the acceptance-of-responsibility reduction or the motion for variance. *See*, e.g., *United States v. McClain,* 149 Fed. Appx. 549, 551 (8th Cir. 2005); *Rucker,* 2003 WL 244728, at *5. Counsel not only provided reasonable professional assistance—he served the defendant well, as borne out by the results at sentencing.

## PREJUDICE

It is equally evident that the defendant was not prejudiced by counsel's performance, because "[n]o credible evidence points to the conclusion that the district court would have changed its ruling based on an objection from counsel." *Auman,* 67 F.3d at 162. The Court varied from the Guidelines and sentenced the defendant based on the 18 U.S.C. § 3553 factors: the Court finds, and the record shows, that the defendant would have received *at least* the same sentence regardless of the loss calculation. *See, United States v. Strasser,* 502 Fed. Appx. 736, 740 (10th Cir. 2012); *United States v. Dockery,* 423 Fed. Appx. 487, 490-91 (5th Cir. 2011); *Rucker,* 2003 WL 244728, at *5. The defendant has presented no evidence showing that his sentence would have been lower but for counsel's failure to press his objections to the loss calculation, nor has the defendant actually alleged that the loss calculation is inaccurate. *Cf. Champion v. United States,* 319 Fed. Appx. 443, 446-47 (8th Cir. 2009).

In point of fact, had the defendant not withdrawn his objection to the KAA loss, he would have been unable to make full restitution before sentencing. And the record establishes that had the defendant not made full restitution before sentencing, his motion for variance would likely have been denied. The Court recognizes that any amount of additional jail time resulting from the ineffectiveness of counsel has constitutional significance. *Glover v. United States,* 531 U.S. 198, 203 (2001). But there is no reasonable probability that in this case, the result of the proceeding would have been better for the defendant. The strategy pursued by counsel got the defendant an 11-month downward variance that would have been unavailable had counsel done what the defendant now claims he should have. The record not only fails to show prejudice to the defendant—it shows the opposite.

## CONCLUSION

With respect to the KAA funds—the linchpin of the defendant's claim for relief—the defendant's allegations are contradicted by the record and involve conclusions rather than statements of fact. As such, no evidentiary hearing is required. *Champion,* 319 Fed. Appx. at 446 n.3. Counsel's failure to press an objection to the loss calculation was neither unreasonable nor

prejudicial—in fact, it is abundantly clear from the record that counsel's strategy was highly beneficial to his client. Therefore, the defendant's motion will be denied.

A movant cannot appeal an adverse ruling on his § 2255 motion unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the movant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, the movant must demonstrate that reasonable jurists would find the Court's assessment of the constitutional claims debatable or wrong. *Tennard v. Dretke,* 542 U.S. 274, 282 (2004); *see also Gonzalez v. Thaler,* 132 S. Ct. 641, 648 (2012).

In this case, the defendant has failed to make a substantial showing of the denial of a constitutional right. The Court is not persuaded that the issues raised are debatable among reasonable jurists, that a Court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, the Court will not issue a certificate of appealability.

IT IS ORDERED:

1. The defendant's pro se motion to vacate under 28 U.S.C. § 2255 (filing 86) is denied.

2. The Court will not issue a certificate of appealability in this matter.

3. A separate judgment will be entered.

4. The Clerk is directed to mail a copy of this Memorandum and Order to the defendant at his last known address.

Dated this 25th day of June, 2013.

BY THE COURT:

John M. Gerrard
United States District Judge